# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL VALDEZ MARTINEZ, | Case No. 1:26-cv-01870-KES-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO RELEASE PETITIONER |
| v. | |
| WARDEN OF THE MESA VERDE DETENTION FACILITY, et al., | |
| Respondents. | ORDER DENYING PETITIONER'S MOTION TO APPOINT COUNSEL |
| | (ECF No. 2) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Petitioner be released from custody.

### I.

### BACKGROUND

Petitioner is a noncitizen currently detained at the Mesa Verde Detention Facility pending ongoing removal proceedings. (ECF No. 1 at 4.[1]) The petition alleges that on August 8, 2025, Petitioner was working on a hotel renovation when several unidentified men with their faces covered attacked Petitioner and prevented him from leaving. (Id. at 5–6.)

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

On March 9, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 6–17.) The Court "construe[d] the Petition as also challenging the statutory authority for Petitioner's detention" and ordered Respondents to "address[] whether this case is distinguishable from those cases in which this Court has granted habeas relief." (ECF No. 5 at 1, 2.) On March 24, 2026, Respondents filed an answer. (ECF No. 9.) To date, no traverse has been filed, and the time for doing so has passed.

**II.**

**DISCUSSION**

**A.  Statutory Basis of Petitioner's Detention**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Respondent asserts that Petitioner is subject to mandatory detention under to 8 U.S.C. § 1225(b)(2)(A) whereas Petitioner asserts that § 1226(a) is applicable.

8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by

§ 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or

paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)

However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 929 (N.D. Cal. 2025) (footnote omitted).

Although Respondents have failed to follow this Court's order to respond to "the construed challenge to the statutory authority for Petitioner's detention and address[] whether this case is distinguishable from those cases in which this Court has granted habeas relief," (ECF No. 5 at 2), "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all "applicants for admission." Valencia v. Chestnut, 809 F. Supp. 3d 1064, 1067 (E.D. Cal. 2025). See J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025) ("The various legal arguments relied upon by Respondents to support this assertion [that Petitioner's detention is mandatory under 1225(b) while his removal proceedings are pending] have been rejected by this Court in other proceedings.").

This Court will follow the majority approach in finding that the government's "interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

Based on the foregoing, the undersigned recommends finding that the statutory basis of Petitioner's detention is 8 U.S.C. § 1226(a), which provides for release on bond or conditional parole, and thus, Petitioner is entitled to habeas relief on the construed claim challenging the statutory authority for his detention.

\\\

4

**B. Appropriate Remedy**

The Court finds J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025), instructive:

> Moreover, the government did not comply with the express terms of section 1226 when it detained petitioner, so the Court cannot conclude that he is now detained on that basis. "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." *Chogllo Chafla*, 2025 WL 2688541, at *11. "Section 1226(a) plainly states: '*On a warrant issued by the Attorney General*, a [noncitizen] may be arrested and detained ....'" *Chogllo Chafla*, 2025 WL 2688541, at *11 (quoting 8 U.S.C. § 1226(a)). "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Id.* "To put it simply, [petitioner's] detention[ ] [is] improper because there is no evidence in the record that [he was] arrested pursuant to a warrant." *Id.* "Since the Government did not comply with the plain language of section 1226(a), [petitioner's] immediate release is justified." *Id.*; *Chiliquinga Yumbillo v. Stamper*, No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *5 (D. Me. Sept. 30, 2025) (reaching the same conclusion).
>
> If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

J.A.C.P., 2025 WL 3013328, at *8.

Similarly, here, there is nothing in the record before this Court indicating that Petitioner was arrested pursuant to a warrant. Further, Respondents do not contend that Petitioner was arrested "based on any alleged criminal history" or that he is a danger or flight risk. (ECF No. 9 at 2.) Accordingly, the undersigned recommends finding that Petitioner is entitled to immediate release.

**C. Prolonged Detention**

Alternatively, the undersigned also finds that Petitioner is entitled to habeas relief on his prolonged detention claim. Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir.

2008).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must

provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that "§§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings

for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

Respondents argue that "Petitioner does not possess the right to freedom from immigration detention in any form other than the form provided by Congress." (ECF No. 9 at 2 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).) However, Mezei addressed due process rights *with respect to admission*, and here, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025).

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez, 2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the

8

nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, the Court will apply Mathews, in which the Supreme Court held that "identification of the specific dictates of due process

generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

### 1.   Private Interest

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor weighs in favor of Petitioner.

### 2.   Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous

procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

Petitioner has been detained for almost nine months and has not received any bond hearing before a neutral decisionmaker bond. Accordingly, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards is high. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has not received any bond or custody redetermination hearing during his one-year detention. Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all."). Therefore, the second Mathews factor weighs in favor of Petitioner.

### 3. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, it is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration

laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

### 4. Bond Hearing

Based on the foregoing, all three Mathews factor weigh in favor of Petitioner. "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge" with respect to Petitioner's prolonged detention claim. Lopez, 631 F. Supp. 3d at 882. The Court now turns to the burden of proof at the bond hearing and which party should bear such burden.

Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is

substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

Based on the foregoing, the Court finds that the government must justify Petitioner's continued confinement by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO (HC), 2025 WL 1808676, at *1 (E.D. Cal. July 1, 2025) (directing respondent "to schedule a bond hearing before an immigration judge . . . wherein respondent must justify petitioner's continued detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community").

Further, in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); Black, 103 F.4th at 138 (The district court "correctly directed

13

the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### D. Motion to Appoint Counsel

Petitioner has moved for appointment of counsel. (ECF No. 2.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if "the interests of justice so require." To determine whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

In light of the Court's conclusions, the undersigned finds that the interests of justice do not require the appointment of counsel at the present time.

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be directed to immediately release Petitioner and be enjoined and restrained from re-arresting or re-detaining Petitioner unless Respondents provide no less than seven (7) days' notice to Petitioner and hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond is considered.

3. Or, alternatively, Respondents be directed to provide Petitioner with a bond hearing before an immigration judge to be held within thirty (30) days that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which

   a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and

b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

Further, Petitioner's motion for appointment of counsel (ECF No. 2) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 21, 2026**          /s/ *Erica P. Grosjean*
                                    UNITED STATES MAGISTRATE JUDGE

15